W. H. McELWAIN CO. v. BULLOCK.

(Circuit Court of Appeals, First Circuit. November 11, 1914.)

No. 1083.

1. MASTER AND SERVANT (§ 219*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.

Plaintiff for four years had operated a sewing machine in defendant's shoe factory, above which was an electric light. She arrived one morning five minutes before time to commence work, when it was quite dark, and was unable to turn on her light, because the current had not been switched on from below, which was done, however, in two or three minutes. In the meantime she undertook to hang up her coat in the place provided, which required her to step upon a chair and from there on a bench, and in doing so she placed the chair on some shoe uppers which had been left on the floor by a fellow servant, and, the chair tilting, she fell and was injured. Held that, in so far as there may have been negligence in so placing the coat hangers as to make it necessary to climb upon the bench, the risk was an obvious one, which she knew and assumed; that she also assumed the risk involved in moving around and placing the chair in the dark, which were not required by her employment or properly incident thereto.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. WORDS AND PHRASES—"WIRE OF SHOES."

A "wire of shoes" is a four-pronged structure of wire, on which are strung the tops or uppers of shoes.

In Error to the District Court of the United States for the District of New Hampshire; E. Aldrich, Judge.

Action at law by Elizabeth M. Bullock against the W H. McElwain Company. Judgment for plaintiff, and defendant brings error. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Edward C. Stone, of Boston, Mass. (Sawyer, Hardy & Stone, of Boston, Mass., on the brief), for plaintiff in error.

Edward K. Woodworth, of Concord, N. H. (David W. Perkins, of Manchester, N. H., and Streeter, Demond, Woodworth & Sulloway, of Concord, N. H., on the brief), for defendant in error.

Before PUTNAM and BINGHAM, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. This is a writ of error for review of the rulings of the District Court in an action of tort, wherein the plaintiff, Elizabeth M. Bullock, here defendant in error, had a verdict.

Upon the trial before a jury the defendant, W. H. McElwain Company, at the conclusion of all the testimony, both on behalf of plaintiff and of defendant, moved for the direction of a verdict in its behalf, on the ground that the evidence was insufficient in law to support a verdict for the plaintiff.

While there are 18 assignments of error, we think it sufficient to consider whether there was error in the refusal of defendant's request for the direction of a verdict in its favor.

The plaintiff, Elizabeth M. Bullock, was employed as a vamper in the shoe factory of W. H. McElwain Company, at Manchester, N. H., and operated a sewing machine at a bench whereon were a number of machines, over each of which was suspended an ordinary electric light. The plaintiff was required to be at work at quarter before 7 o'clock a. m., and arrived at the workroom at 20 minutes before seven, on January 4, 1910, when it was still quite dark.

The entrance to the factory and the stairways were artificially lighted, but there was no artificial light in the workroom. The only means of artificially lighting the interior of the room was by electric lights suspended over each machine.

The plaintiff testified that when she entered the room it was light enough so that she could see and get around, and could easily go to her machine. When she arrived at her machine she reached up to turn on the light, but was unable to do so because the current had not been switched on from the main switch controlling all the individual lights in this room, which was situated in a box beside the door on the lower floor. The key to this box was in the possession of a foreman, whose duty it was to turn on the switch when he came in the morning. Plaintiff testified that it was so dark she could not see the floor as she stood there.

[2] The plaintiff then took off her coat, and, for the purpose of hanging it up on hooks, which had been provided for this purpose by the company, on a post back of her machine, placed a chair against a bench back of her, stepped on the chair with her coat upon her arm, and was stepping from the chair to the bench, when the chair tipped and threw her to the floor, inflicting injuries to her knee. She testifies that the light was thrown on two or three minutes after she fell, and that she looked around where she had set her chair, and saw what is called a "wire of shoes." A wire of shoes is described as a four-pronged structure of wire, on which were strung the tops or uppers

of shoes. They were strung 12 pairs on a wire by the operatives, and as a wire was finished it was, in ordinary course, thrown by the operative into the aisle behind her, where it was picked up by a boy. Though she did not so state directly, the inference was suggested that her chair had been placed upon this, and for that reason had tipped.

There was evidence that in order to hang up her garments upon the hooks provided for this purpose it was necessary for her to climb a chair and step from that to the bench, and that no other means were provided for that purpose; that she had done this all the time she had worked in this place—about 4 years.

On cross-examination she stated that she put both feet on the chair, and put her right foot on the bench, when the chair tipped over to the left; that her knee hit the chair, and also struck the floor.

[1] The defendant in error argues that the jury would have been warranted in finding that the master, in the exercise of a reasonable degree of care, should have provided a place to hang coats and hats, the use of which did not require a climb upon a bench, or should have provided a method of stepping on to the bench, involving the use of something less insecure than a light kitchen chair. It is argued, also, that the master was at fault in a failure to light the place and to keep the floor free from obstructions.

The jury were instructed in the following language:

"You may think, independent of the question of lighting, or independent of the question of the wire of shoe uppers, that there was fundamental fault, and that the place was unsafe, and in getting up there, either with or without light, or knowing about the string of uppers, or not knowing about them, that if the woman while in the exercise of reasonable care, by reason of the fundamental fault of furnishing an insecure and unsafe place, was injured. If that is your view, you have a right to decide the case upon that ground alone, if that is in accordance with your judgment. Some of you may take that view; some of you may not; possibly none of you will take that view."

As to this branch of the case, it is quite clear that, if risk was involved in stepping from a chair to a bench, it was a risk which was obvious to a woman of 27 years of age, who had done this for 4 years, and that such risk was known and assumed.

It remains to consider how far this risk was affected, if at all, by any other negligence of the master.

There is no contention that the electric lighting system in itself was defective. The negligence attributed to the master is that the light was not turned on, and that the wire of shoes was not removed from the floor.

Assuming that the absence of light may have contributed to the accident by concealing the wire of shoes on the floor, or possibly making uncertain the step from chair to bench, it does not appear that there was any necessity for the plaintiff to attempt to place the chair or to step upon the bench before the light had been turned on. The testimony shows that the electricity was turned on within two or three minutes, and before the time at which she was required to go to work. The clearing of the wires of shoes from the aisles is shown to have been the duty, not of the master, but of a fellow servant. The risk from moving about in the dark, or from insecurely placing a chair in

the dark, was not a risk required by her employment, or properly incident thereto, but an ordinary and obvious risk, which was voluntarily assumed.

We are of the opinion that the defendant's request for the direction of a verdict should have been granted, and that the refusal was error.

The judgment of the District Court is reversed, the verdict is set aside, and the case remanded to that court for proceedings consistent with this opinion; and the plaintiff in error recovers costs in this court.